### MERCHANTS' BANK OF CANADA v. BROWN et al.

(Supreme Court, Appellate Division, Third Department.   September 9, 1903.)

1. NOTES—BY WHAT LAW GOVERNED.

　　A note made in Canada, and by its terms payable there, is a contract governed by its laws.

2. SAME—PROTEST—DILIGENCE IN GIVING NOTICE—EVIDENCE.

　　The evidence in an action on a note against the executors of an indorser, where the notice of protest was sent to one not an executor, but a law partner of an executor, and who for some time kept it from the executor, *held* sufficient to sustain a finding that reasonable diligence was exercised in finding and giving notice to the personal representative.

3. SAME—ALTERATION.

　　The writing in pencil by the manager of a bank below the name of an indorser on a note held by it of his address, for the purpose of directing the bank clerks in keeping their records, is not an alteration of the instrument.

4. SAME—PROTEST—NOTICE TO EXECUTORS—INSTRUCTION.

　　In an action against the executors of an indorser of a note governed by bills of exchange act of Canada (53 Vict. c. 33, § 49), providing that where an indorser is dead and the party giving notice of protest knows it the notice must be given to a personal representative, if with the exercise of reasonable diligence he can be found, the death of the indorser before maturity of the note, and plaintiff's knowledge thereof, being admitted, and the whole issue being whether plaintiff was misled and misinformed as to who deceased's representatives were, and in view of all the circumstances, had done all that could reasonably be required in giving notice of dishonor, defendants were entitled to an instruction that, as the indorser was dead and that fact was known to plaintiff before maturity of the note, it was its duty to give notice of the dishonor to the executor or executrix, if either could be found with the exercise of reasonable diligence.

Appeal from Trial Term, Warren County.

Action by the Merchants' Bank of Canada against Louis M. Brown and another, executors of William E. Spier, deceased.   From a judgment on a verdict for plaintiff, and from an order denying a new trial on the minutes, defendants appeal.   Reversed.

The action is upon a promissory note made by the Republic Power & Cyaniding Company, dated Montreal, March 1, 1901, payable six months after date, to the order of that company, at the Merchants' Bank of Canada, in Montreal, which is indorsed by that company, by William E. Spier, defendants' testator, and by A. A. Ayer.   Spier died May 8, 1901, and the defendants were appointed executors of his will by the Surrogate's Court of Warren county, July 1, 1901.   This suit is brought on the indorsement made

---

¶ 3. See Alteration of Instruments, vol. 2, Cent. Dig. § 41.

by Spier. The defenses are that there was a failure to give due and timely
notice of protest, and that there has been a material alteration made in
the contract of indorsement, which discharged Spier and his estate from
liability on the note.

Argued before PARKER, P. J., and SMITH, CHASE, CHES-
TER, and HOUGHTON, JJ.

Edgar T. Brackett, for appellants.
Bell & Wait, for respondent.

CHESTER, J. The note, having been made in Canada and being
by its terms payable there, was a contract governed by the law of that
dominion. Merchants' Bank v. Griswold, 72 N. Y. 472, 28 Am. Rep.
159; Union National Bank v. Chapman, 179 N. Y. 538, 62 N. E. 672.

The bills of exchange act in Canada (53 Vict. c. 33, § 49) provides
in relation to notice of dishonor of bills and notes:

"Notice of dishonor, in order to be valid and effectual, must be given in
accordance with the following rules: * * * Where the drawer or in-
dorser is dead, and the party giving notice knows it, the notice must be given
to a personal representative, if such there is, and with the exercise of reason-
able diligence he can be found."

There being days of grace under the Canada law, the note in ques-
tion became due September 4, 1901. On that day, and after default
in the payment of the note, the manager of the plaintiff bank wrote
and mailed a letter addressed to "Stephen Brown, Esq., Executor of
the Estate of the Late William E. Spier, Glens Falls, N. Y.," in which
he said:

"A promissory note of the Republic Power & Cyaniding Company for
$10,000, indorsed by William E. Spier, fell due to-day, and has been protested
for nonpayment. We beg to inform you that we are handing it to our solic-
itors, with instructions to enforce payment from the estate of the late Mr.
Spier."

Stephen Brown, to whom this letter was addressed, was not the
executor of such estate, but his son and law partner, Louis M. Brown,
was. The letter was received by Stephen in due course of mails, and
was by him carefully concealed from his son, the executor. The
former testified that when he received it he read it carefully, put it
back into the envelope, and locked it up in the private box where he
kept his private papers; that he saw it was directed to the executor
of the estate of William E. Spier; that he thought he was on the
other side of the case, and was not trying to help those people in
Montreal to collect this note; and that he did not tell the executor,
because he thought he owed allegiance to the estate of William E.
Spier, and not to the bank of Montreal.

There was much evidence given upon the question as to whether
or not the bank had exercised reasonable diligence in finding and giv-
ing notice to the personal representatives of the estate, the indorser
being dead. It was shown that Stephen Brown went to Montreal
some time in July, 1901, and called, first, upon Mr. Ayer, the other
indorser, and next upon Mr. Ramsey, the manager of the plaintiff.
He called upon the latter by request of his son, the executor, to
procure information concerning the note, and to obtain an inspection

of the same, and to find out whether, in his opinion, the indorsement by Spier was genuine. There is some conflict between the testimony of Mr. Ramsey and Stephen Brown as to what occurred upon that occasion. Mr. Ramsey stated that Brown gave him his card with the words "Mr. Stephen Brown" thereon, and stated that he was a lawyer and represented Mr. Spier's estate. Ramsey swears that he did not inform him that Louis M. Brown was executor of the estate. Mr. Brown, on the other hand, says he told him that his son was executor, and that the widow was executrix. Mr. Ramsey testified that from the conversation he had at that time he believed Stephen Brown was the executor. On September 4th Ramsey had mislaid the card Brown had given him, and had forgotten the name of the gentleman who left it. When the note was not paid, he, on the day it became due, telephoned to Ayer, who was the president of the company which made the note, and the last indorser thereon, and asked him if he could tell him who was the executor of Spier's estate; and Ayer informed him that Stephen Brown, of Glens Falls, N. Y., was, and Mr. Ramsey replied, "Yes, that is the name of the old gentleman who called on me some time ago." Mr. Ayer said, "Yes, he called on me also." Thereupon Ramsey wrote and mailed the letter addressed to Stephen Brown, executor, which has been heretofore mentioned. About 10 days after this letter was mailed the executor, Louis M. Brown, went away from Glens Falls, and did not return until the 25th of September, and the next day, as he says, he personally learned for the first time, through the cashier of a bank in Glens Falls, to whom the note had been sent for collection, that it had been dishonored, although there is evidence which justifies the inference that he knew it within a week or 10 days after the maturity of the note; for he testified upon cross-examination that in a conversation with his father, which was from a week to 10 days after the maturity of the note, the latter told him he had received a letter from the Canada bank to the effect that it was about to commence suit on the note, or was about to put the note in the hands of an attorney to have suit commenced.

It would appear that the reason the notice of dishonor did not come to the executor within a day or two after it was mailed was due quite as much to the views of professional ethics entertained by the counsel employed by him and to the conduct of such counsel in withholding a letter wrongly addressed to him as executor as to the error of the manager in so addressing the letter containing such notice. But we do not think it of much consequence in the decision of this case when the executor in fact received the letter or first received actual notice of the nonpayment of the note. These facts were important only as related to the questions whether the bank exercised reasonable diligence in finding and giving notice of dishonor to the personal representatives, and whether any delay in giving notice had been excused. These were purely questions of fact for the jury, and each has been determined by their verdict against the contention of the defendants, and we think upon sufficient evidence.

There has been no alteration whatever in the contract of indorsement made by Spier, and the defense must fail upon its claim that there was. The words, "Glens Falls, N. Y.," were written in pencil

by the manager of the bank, below Spier's indorsement of his name upon the note, as a mere memorandum, pursuant to the custom of the bank to do so where the address of the indorser was not known, and it was done for the purpose of direction to the clerks in the bank in keeping their records. The penciled words upon the note clearly show that they are not in the handwriting of Spier, so as to amount to a direction of his below his name designating a place where he desired a notice of protest to be sent. The penciled addition in no way changed the obligation of the indorser, nor did it in the slightest degree change, or assume to change, his contract. It was a mere memorandum, made for the convenience of the bank, and the defense based thereon must therefore fail. Daniel on Neg. Inst. (5th Ed.) § 1399; Struthers v. Kendall, 41 Pa. 214, 80 Am. Dec. 610.

But, notwithstanding the conclusions we have reached upon the questions so far discussed, we think there must be a new trial because of exceptions to the refusal of the court to charge some of the requests made by counsel for the defendants.

The direction first asked was that as the indorser Spier was dead, and that fact was known to the plaintiff at and before the maturity of the note, it was the duty of the plaintiff to give notice of the dishonor of the note to the executor or executrix, if either could be found with the exercise of reasonable diligence. Under the issues in the case as tried, the defendants were entitled to have the jury so instructed. There was no controversy over the death of Spier, or the knowledge of the plaintiff, through its proper officer, of that fact. The complaint alleged his death months before the maturity of the note. This was not denied by the answer, and the whole issue, as tried before the jury, was not that he was not dead or that the plaintiff did not know of it, but that the plaintiff was misled and misinformed as to who his representatives were, and that in view of all the circumstances the plaintiff had done all that could reasonably be required in giving notice of dishonor of the note in the manner in which it did.

A further request was made that, inasmuch as the plaintiff's manager knew of Spier's death before the date the note became due, the notice of dishonor sent to Spier at Montreal was insufficient to charge the defendants. The effect of the refusal of this request was to hold that notice of dishonor mailed to an indorser known to be dead, directed to a post office known to be one at which he had not received his mail while living, was a good notice. We do not think the Canadian bills of exchange act can be so construed. Nor did the plaintiff so construe it, for it attempted to give notice of the dishonor of the note to the representatives of the indorser, and tendered the issue on the trial that it had done all in that respect that could reasonably be required of it.

There were other requests of a similar character which the court refused to charge; but, inasmuch as we deem those discussed fatal to the judgment, it is unnecessary to consider them in detail.

The judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.