# The Orphans' Court *against* Woodburn.

One who becomes interested in the prosecution and recovery of a claim after suit brought, and divests himself of that interest before the trial of the cause, is a competent witness.

If the act of an attorney be set up as a defence against the claim of his client, his contingent liability to his own client by reason of that act, is not sufficient to render him an incompetent witness.

Lands cannot be levied or sold by virtue of a writ of execution in the nature of a *fieri facias* issued out of the Orphans' Court in pursuance of the 13th section of the Act of 29th March 1832, but personal property only.

ERROR to the Common Pleas of *Cumberland* county.

The Orphans' Court of Cumberland county for the use of the Commonwealth against Samuel Woodburn.

Action of debt on bond for $35,000, brought 30th March 183* to April term 1838.  Plea, payment with leave, &c.

John Harper was administrator of William Ramsey deceased, and on 3d August 1833 petitioned the Orphans' Court for authority to sell lands to the amount of $35,000.  The court made a decree accordingly, and this bond was executed conditioned for the faithful appropriation of the proceeds of sale.  It was signed by Harper, Woodburn, Penrose and J. M. Woodburn.  Sales were made and confirmed to the amount of $2751.80.  Auditors were appointed, who distributed the money; to the Commonwealth a balance was due of $3170.63, with interest from 5th September 1833.

The defendant showed the records of a petition of the Commonwealth to the Orphans' Court, and rule on Harper to show cause why he should not pay over the money, and his acceptance or service on 27th August 1838.

12th November 1838, on motion of Mr Hepburn and application of Commonwealth, *fieri facias* awarded, returnable to next Orphans' Court, which was issued, and returned with levy, and amicable condemnation of defendant's real estate.

25th June 1839, precipe by J. Williamson, attorney for plaintiff, for *venditioni exponas* and writ issued. This was objected to, as having issued without authority, as invalid; but was admitted, and exception taken by plaintiff.

It was returnable 10th September 1839; and was returned, "stayed by order of plaintiff's attorney; costs paid sheriff Myers."

John Harper, Esq. principal in the bond in suit, called as a witness for defendant. His competency objected to by plaintiff. Release from defendant to witness read, dated 4th March 1844. Admitted that suit is now pending against C. B. Penrose, Esq. a co-surety in the bond. Objection overruled, and plaintiff excepts.

Defendant offers to prove by the witness the value of the property levied on at the time of the levy, which is objected to by plaintiff; admitted, and exception taken.

Witness gave the values, about $26,350.

The records of twenty-two judgments against Harper, amounting to nearly $10,000, entered on and after 15th April 1839. Also mortgages for $6296, dated in 1835. These records were objected to by plaintiff; admitted, and exception taken by plaintiff.

John Harper was then examined as a witness, and testified, in substance, that while the *venditioni exponas,* now in the hands of the sheriff, and his real estate about to be advertised for sale, he procured James H. Devor and Charles Barnitz to make an arrangement with Samuel Hepburn, Esq., the attorney of the Commonwealth, that they would pay him two thousand dollars on account of the debt, and agree to guarantee the payment of the balance of the judgment in consideration of his agreement as the attorney of the Commonwealth to stay further proceeding for the collection of the debt until the return day of the *venditioni exponas,* 10th September then next; and in pursuance of this arrangement the proceedings were thus stayed.

The plaintiff then offered James H. Dever as a witness, who was objected to by the defendant on the ground of his interest; and to support the objection the defendant gave in evidence the following paper:— "Received, August 14th 1839, of C. Barnitz, $1600, and of James H. Devor $400, on account of the purchase of this judgment by them; the whole judgment to be on interest until the balance of it is paid, and then to be assigned to the said Barnitz and Devor. S. Hepburn, attorney for plaintiff."

The defendant also showed other evidence to prove that Mr Devor had taken part in managing the suit after his purchase of the claim.

To rebut this the plaintiff exhibited an assignment by Mr Devor to Mary Devor, dated 7th March 1844, of all his right, title, claim or interest in the plaintiff's claim. The defendant still objected on the ground that the witness having once been a party in interest in the suit, could not divest himself of a liability to the defendant for costs. The court rejected the witness, and sealed a bill of

[The Orphans' Court v. Woodburn.]

exception. The testimony of Charles Barnitz was offered, and rejected on the same ground.

The plaintiff then offered Samuel Hepburn, Esq., as a witness. His competency was objected to on the ground of interest. The objection was sustained, and the plaintiff excepted.

The plaintiff requested the court to charge the jury upon the following point: — "The land of Harper could not legally be levied on upon the *fieri facias* issued out of the Orphans' Court, nor had the said court any power or authority to issue a *venditioni exponas* for the sale of such lands; nor could the sheriff have made any sale thereon; but the process was void, and any agreement to stay or to stop its execution would not constitute any defence in favour of defendant in this action."

The court answered this point in the negative.

This answer of the court and the rejection of the witnesses were the subjects of the errors assigned.

*Reed* and *Alexander,* for plaintiffs in error, argued that Harper was incompetent to testify by reason of his liability to his co-obligors for contribution; that a release by the defendant alone was not sufficient. Barnitz and Devor were not rendered incompetent by the fact of their having once been interested in the plaintiff's recovery. The question is, were they interested when offered as witnesses? The contingent interest of Hepburn would not disqualify him; this verdict and judgment could not be given in evidence in an action against him by his client. They referred to the Act of 1832, relative to the Orphans' Court, Section 57, Nos. 11 and 16, and argued that it was not the design of the Legislature to make this a remedy for the sale of lands. A sufficient remedy, both for the security of the debt and collection of it, existed before, and there was therefore no necessity for it. Besides, the Act does not make sufficient provision for carrying out such a design; no lien on the land; no *venditioni exponas* given; no *testatum fieri facias;* no provision for the acknowledgment or recording of a deed. But even conceding that lands may be levied and sold, this was but a stay of the proceedings, which would not release the security. It would not be more injurious to a surety than suffering the lien of a judgment to expire, which has been held to be no discharge. 3 *Penn. Rep.* 437; 5 *Watts* 172; 8 *Watts* 448.

*Biddle* and *Watts,* contra, argued that the release of Harper from any liability to the present defendant made him competent. But were Devor and Barnitz competent? It is clearly settled that the equitable plaintiff or assignee of the plaintiff for whose use the suit is brought, is liable for costs, which may be collected from him if he be not named on the record as a party, by attachment. 3 *Penn. Rep.* 171; 1 *Binn.* 496; 5 *Watts & Serg.* 510. It is ad-

mitted that these persons were interested to the amount of two thousand dollars, and remained so from August 1839 until March 1844, during which time this suit was prosecuted for their use, and clearly at their expense if they failed. That costs did accrue during this time is as certain as the suit was pending; for by law, costs accrue at every term. That the Commonwealth is not liable for costs renders the necessity stronger for making the equitable plaintiff, who uses her name, chargeable. Being once liable, they could not release themselves from it. The defence here was that the attorney of the Commonwealth contracted for a sufficient consideration to stay the proceedings against the principal for a given time, by which the surety was discharged. If this defence was sustained in fact, the attorney would be chargeable to his client, and the verdict and judgment in this suit would be evidence against him. 2 *Stark. Ev.* 747. 769; 2 *Saun. Pl. Ev.* 942. The statute which authorizes the issuing of a *fieri facias* out of the Orphans' Court is a remedial one, and therefore to be construed liberally. The evil which existed before the passage of the Act was, that in order to recover a debt due by an administrator, executor, or guardian, after his account was settled, you must either bring an action upon it, or file a transcript and issue a *scire facias* and proceed to the recovery of a judgment in the Common Pleas for that for which the Orphans' Court had already made a decree, and which decree was just as binding and conclusive as the judgment of the Common Pleas after it was obtained. To remedy this circuity and delay, the *fieri facias* was given upon the decree of the Orphans' Court. And the language of the Act is, "The proceeding thereon shall be the same as on writs of *fieri facias* issued by the Courts of Common Pleas, &c." Why say more? What more could be said to give the party all the legal machinery which is afforded by the Act relative to executions and of the Common Pleas than this? Why repeat that he shall have a *venditioni exponas?* that the sheriff shall hold an inquisition, make a deed, &c.? This is all embraced in the language used.

The opinion of the Court was delivered by

Rogers, J.—James H. Devor and Charles Barnitz, witnesses for plaintiff, were excluded by the court on the ground that they had such an interest in the suit as to subject them to costs in the event of a judgment for the defendant. This decision is made on the authority of *Gallagher* v. *Milligan*, (3 *P. R.* 178). In that case it is ruled that where a person is entitled to a part of the money sued for at the commencement of the suit, he has such an interest in the recovery, although his name does not appear on the record, as to render him liable to costs; that, in effect, he is a party to the suit at its inception, and cannot afterwards discharge himself without the consent of the defendant. That, however, is not the case in hand. When the suit was commenced, the Commonwealth

[The Orphans' Court v. Woodburn.]

was the only party, who, be it observed, are not bound to pay costs. But afterwards it appears that Devor and Barnitz became interested by assignment from the Commonwealth, which interest before the termination of the suit they assigned, Devor to Mary Devor, and Barnitz to George W. Hitner. The question therefore is, were they liable to costs, and to what extent? It would be carrying the principle a great way to hold them responsible beyond the costs actually incurred during the continuance of their interest; but whether costs were made during that time does not appear, and this of itself would be cause for reversing the judgment. But are they liable for any costs whatever? and we are inclined to think they are not. This is a new case, and we think that the principle is carried far enough in *Gallagher* v. *Milligan;* it would be inconvenient, and would produce difficulty in the apportionment, to extend it further than has been already done. At the time Barnitz was offered as a witness, he had no interest in the suit, having assigned his claim to George W. Hitner for a valuable consideration, without any idea, so far as appears, of becoming a witness.

The next question is as to the rejection of the testimony of Mr Hepburn. Mr Hepburn was the counsel of the Commonwealth, who, it is alleged, entered into an agreement with Harper, Devor and Barnitz, by virtue of which the defendant (who is one of the sureties of Harper) contends he is discharged from the payment of the debt. It is said he is interested, because, if the judgment be for the defendant, he the witness is liable to an action at the suit of the Commonwealth. The arrangement alleged by the defendant was, that in consideration that Devor and Barnitz would pay the Commonwealth $2000 on account of the debt due from Harper, and would become personally liable for the residue of the debt, Mr Hepburn, as counsel, agreed to stay proceedings against Harper. The effect of the agreement will be to discharge the defendant and Charles B. Penrose, who were the sureties for Harper, from all liability on their bond.

In considering this question, I shall take it for granted that the attorney had authority, either general or special, to make the agreement; and if this be so, I see no objection to his proving the nature and extent of it, or whether any agreement whatever was entered into. He would, at all events, be only answerable for the abuse of his authority; and we are not at liberty to suppose that he was wanting in good faith or skill, without any proof whatever, merely for the purpose of excluding him as a witness. A contingent liability is no ground for excluding a witness. An agent is competent to prove a parol authority to make a lease. *Gonagle* v. *Thornton*, (10 *Serg. & Rawle* 257). The general rule is in favour of the competency of an agent as a witness, unless in cases where the principal is sued on account of the negligence of the agent. In such cases the agent cannot be a witness for the prin-

cipal, because, in the event of a recovery against the principal, the agent becomes liable to indemnify the principal; and the judgment against the principal would be evidence against the agent in an action by the principal for indemnity.

Next, as to the power of the Orphans' Court to sell lands by virtue of the 17th section of the Act of the 29th March 1832. In that section it is enacted " That compliance with an order or decree of the Orphans' Court may be enforced by attachment or sequestration, *or, in case of a decree* for *payment of money against a party who has appeared,* the complainants may have a *writ of execution, in the nature of a fieri facias,* which writs may be allowed by the court, or any Judge thereof in vacation."

It is also provided that writs of *fieri facias* shall be directed to and executed by the sheriff or coroner, as the case may require, of the proper county; and the proceedings thereon shall be the same as on writs of *fieri facias* issued by the Courts of Common Pleas of the same county.

And in the 29th section of the same Act it is further provided that certified copies or extracts of the amount appearing to be due from or in the hands of an executor, administrator or guardian, on the settlement of their respective accounts in the Orphans' Court, filed by the prothonotary at the instance of the party, contituted a lien on their real estate, from the time of such entry until payment and satisfaction. And this may be enforced by action of debt, *scire facias*, &c.

The intention of the Legislature would seem to have been, to give the parties interested, when there was a decree for the payment of money against an executor, administrator or guardian, a complete security; and this is effected by authorizing them to issue a writ in the nature of a *fieri facias*, by which their personal property may be reached, and, in addition, by authorizing them to file the same in the Court of Common Pleas, by which it becomes a lien on the real estate. It is therefore obviously unnecessary, to cure the mischief intended to be remedied, to extend the remedy further than the necessity of the case requires; for, by pursuing the Act according to its letter, and as I believe its spirit too, all the estate of the debtor may be made available for payment or security, whether it be real or personal. Why then extend the remedy in the Orphans' Court further than to enable them to levy and sell the personal property? This will be attended with no inconvenience; but if the general expressions of the Act are made to embrace the sale of real estate also, a great deal of judicial legislation, without any necessity for it, must be the result. Thus, the Act provides only for a writ in the nature of a *fieri facias;* and although lands, which are chattels for payment of debts, may be seized under that execution, yet nothing is said of an inquisition, and the manner of proceeding under it. No *venditioni exponas* is authorized, except by implication; nor, when

sold, is there any direction for the acknowledgment of the sheriff's deed. Nor is anything said of a *testatum*, or the manner of proceeding under it. All this is left to legal adjudication. We are therefore of opinion that the Legislature did not intend that the land of debtors should be sold by the Orphans' Court, but personal property only by virtue of the *fieri facias.*

Judgment reversed, and *venire de novo* awarded.