# Weyand's Appeal.

1. Although a guardian may be appointed for minors of the same parent by the same order, the guardianship is several and not joint, and the guardian should settle distinct accounts.

2. A decree in the Orphans' Court that there is a sum due by an accountant, is a decree for the payment of the sum found to be due, for which the court may order a fi. fa. against the accountant.

3. A fi. fa. on a decree in the Orphans' Court, and a venditioni, may be directed, notwithstanding more than five years have elapsed since the decree.

4. The law has not provided for a scire facias on such decree.

5. Land was levied on under a fi. fa. out of the Orphans' Court, and a rent fixed by the inquest: the plaintiff did not signify in writing that the defendant might retain the land at the rent, but the defendant endorsed on the writ that he agreed so to retain it, was permitted to retain it and the plaintiff received the rent for several years. The plaintiff would not be permitted to issue a venditioni, without a failure in the semi-annual payment of the rent, and the defendant was estopped from denying the plaintiff's election.

6. The court would allow the plaintiff to file his acceptance *nunc pro tunc*, in order to make the record complete to support the title under a venditioni.

7. Under the Act of April 21st 1846 (Orphans' Court), real as well as personal estate may be sold under a venditioni from that court.

8. A certificate of the balance against the accountant was filed in the Court of Common Pleas, and the lien revived by a scire facias there. This did not prevent the issuing of a venditioni from the Orphans' Court.

May 12th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal of Daniel Weyand from the decree of the Orphans' Court of *Somerset county:* No. 106, of May Term 1869, in the matter of Eliza J. Wallen's estate.

Daniel Weyand, the appellant, was guardian, &c., of Eliza J Graham (afterwards Wallen), Julia Graham and John Graham. He filed one account of his guardianship of all his wards, which was referred to an auditor, and upon his report, the Orphans' Court on the 1st of March 1859 decreed that there was in the hands of the guardian due his wards the sum of $11,676.77, of which $3897.25 were due to Mrs. Wallen.

On the 9th of March 1859, a certificate from the Orphans' Court of the whole balance was filed in the Court of Common

Pleas. On the same day the death of Mrs. Wallen was suggested, and Samuel Gaither her administrator substituted on the record. Weyand appealed to the Supreme Court on the 28th of May 1860. The decree of the Orphans' Court was affirmed with interest from its date. On the 2d of June 1860 the Orphans' Court authorized the issuing of a fieri facias on the amount decreed against Weyand; his real estate was levied on, an inquisition held, after waiver of notice by him, and the property extended at an annual rent of $3000. Weyand endorsed on the writ of fi. fa., and signed the following : " I agree to retain the real estate levied upon, and pay the rent fixed by the inquest according to law. September 1st, 1860."

There is no record of the plaintiff's willingness that Weyand should retain the real estate. Weyand having paid the full amount due to Julia Graham, and the principal part of that due to John Graham, in an amicable scire facias in the Common Pleas, on the 1st of March 1864, confessed judgment for $6538.92, of which $5006.42 were due to the estate of Mrs. Wallen. The balance due John Graham was paid November 1st 1864.

On the 1st of September 1866, Gaither, the administrator, &c., of Mrs. Wallen, filed in the Orphans' Court an affidavit, that Weyand had failed for more than thirty days to pay the semi-annual rent due on the 1st of March, and on the same 1st of September the court awarded a writ of venditioni exponas against Weyand. On the 7th of November Weyand paid the full amount of the debt and interest due Mrs. Wallen. The judgment and costs in the Common Pleas were then marked "satisfied" on the record of that court. On the 12th of November Weyand presented a petition to the Orphans' Court, setting out the foregoing proceedings, including the payment of the amount due Mrs. Wallen's estate, averring that the issuing of the venditioni was contrary to law, and praying the court to set aside the writ and all subsequent proceedings "at the costs of the party at whose instance the same was issued." On this petition the Orphans' Court granted a rule to show cause why the execution, &c., should not be set aside, and the plaintiff in the execution pay all the costs, &c. The court discharged the rule May 11th 1867, and awarded an alias venditioni, which was not to issue for six weeks.

Weyand appealed, and assigned the order of the court for error.

*D. Weyand*, appellant, *p. p.*—Can the Orphans' Court by execution enforce payment of a decree which has stood without revival for more than five years ?

Can the Orphans' Court by a vend. ex. sell real estate to satisfy a decree? Act of March 29th 1832, § 57, Pamph. L. 208–210, Purd. 766, 767, pl. 17, 18, 25, 28, 33; Orphans' Court *v.* Woodburn, 7 W. & S. 168.

[Weyand's Appeal.]

Where lands have been levied on and extended at an annual rent, can a venditioni be allowed until the plaintiff has elected to permit the defendant to retain possession ? Acts of October 13th 1840, § 2, Pamph. L. 2, February 10th 1846, § 1, Pamph. L. 37, Purd. 411, pl. 65, 66 ; Black *v.* Aber, 2 Grant 208.

After the balance in Orphans' Court was certified into the Common Pleas, and the judgment of revival entered, was not the remedy exclusively there ? Collingwood *v.* Carson, 2 W. & S. 220 ; Custer *v.* Detterer, 3 Id. 28 ; Little *v.* Smyser, 10 Barr 384 ; Zerns *v.* Watson, 1 Jones 262 ; Act of 1832, §§ 29, 30, Pamph. L. 197, 198, Purd. 301, pl. 171, 172.

There was no paper-book for appellee.

The opinion of the court was delivered, July 6th 1869, by
AGNEW, J.—The appellant settled one account as guardian of three wards, a practice, by the way, not to be approved of. Guardianship is not joint, but several ; the persons, estates, and interests of the wards being several and independent, though they may be children of the same parents.    Each is liable for his or her own expenditures, and each attains majority, and can call the guardian to account, at a different period.    The account, after reference to an auditor, and amendment, was confirmed by the Orphans' Court, who decreed the money to the wards to be paid to them by the guardian according to the amended report.    This decree, on appeal by Mr. Weyand, the guardian, was confirmed by the Supreme Court, with interest and costs.    After the return of the record, a fi. fa. was issued by leave of the Orphans' Court, June 2d 1860 ;  a levy made on real estate, inquest held after waiver of notice by Weyand, and the property extended at a rent of $3000 per annum.    On the back of the fi. fa. Weyand endorsed as follows : "I agree to retain the real estate levied upon and pay the rent fixed by the inquest according to law."    This was dated and signed by him on the 1st September 1860.    In pursuance of this acceptance, Weyand paid the semi-annual rentals until 1866, and failing to pay the instalment falling due March 1st 1866, the appellee filed his affidavit of non-payment, and obtained leave of the Orphans' Court to issue a venditioni exponas to sell the real estate described in the levy, returnable to November Term 1866.    In November the appellant moved to set this writ aside, and the motion was finally refused in May 1867. From this decision Mr. Weyand appealed, and this is the appeal now before us.

The appellant contends that the decree of the Orphans' Court on the settlement of his account is not such as will authorize a fi. fa. on part of his ward.    At one time this was true, but since the passage of the Act of 29th March 1832 relating to Orphans' Courts, the

practice is different. The decree was in terms and effect a decree against Mr. Weyand for the payment of the money found to be due to his ward: Shollenberger's Appeal, 9 Harris 338, decides this, in which it was held that a guardian was entitled to a fi. fa. against his ward for the balance found due by the ward in the settlement of the guardian's account. A fortiori, the ward would be entitled to the writ against the guardian, on a balance found due by the latter.

The appellant also contends that a venditioni exponas could not issue after five years from the final decree without a scire facias to revive judgment. This is an error. The appellant himself had suspended the execution of the fi. fa. by his retaining the property and paying the rental until 1866. Besides, the law has provided for no writ of scire facias to issue out of the Orphans' Court, and instead of it the 11th clause of the 57th section of the Act of 1832 requires the fi. fa. to be allowed by the court, or a judge in vacation. This furnishes an adequate protection against issuing the writ causelessly; while the Supplementary Act of 21st April 1846, § 2, directs writs of venditioni exponas to be issued out of the Orphans' Court in the same manner that writs of fi. fa. are allowed under the 57th section referred to.

Another objection to the venditioni exponas is, that Mr. Gaither had not signified his election in *writing* that Mr. Weyand should retain the premises at the valuation. A writing is required under the 2d section of the Act of 13th April 1840, and without it the proceeding to sell on venditioni exponas is irregular: Black *v.* Aber, 2 Grant 208. But here the defendant in the writ himself anticipated the election of the plaintiff by endorsing his agreement to retain the premises on the writ, and accordingly was permitted to retain them and pay the rental for nearly six years. The plaintiff in the execution was not bound by this agreement of the defendant, and might have issued his liberari facias; but, after recognising it by accepting the semi-annual rentals, he would not have been permitted to issue a venditioni exponas without a failure of the defendant to pay the instalments. It does not now lie in the mouth of the defendant, therefore, after retaining the property for six years, and failing to make payment, to deny his acceptance and the plaintiff's election, and to set him back to proceed *de novo.* If it becomes necessary to sell under the venditioni exponas, the court will yet permit the plaintiff to file in writing his consent to the defendant's retention of the premises, *nunc pro tunc,* in order to make the record competent to support the title under the sale.

It is contended by the appellant that a venditioni exponas issued under the Act of 1846 does not authorize the sale of real estate, this court having decided in 1844, in Orphans' Court *v.* Woodburn, 7 W. & S. 167, that personal property alone could be levied and sold under the Act of 1832. But the Act of 1846 was man-

[Weyand's Appeal.]

ifestly passed to remedy this supposed defect.  It provides not
only for the writ of venditioni exponas by name, but for the sale
of *real* as well as personal estate, "in the same manner in all
respects as if such writ had issued out of the Court of Common
Pleas."  This would include the deed and acknowledgment.  The
appellant thinks the word "levy" indicates a seizure of personal
estate only.  But the language is, "shall proceed to levy and sell
the real and the personal property."  His interpretation is incon-
sistent with the nature of the writ, and would leave the words
"real estate" without meaning.  The word "levy", however, is
applicable, *reddendo singula singulis*, to the writ of testatum fi. fa.
previously mentioned along with the vend. ex.

In addition to the proceeding in the Orphans' Court, the ward
had procured a transcript of the balance of her guardian's account
to be filed in the Court of Common Pleas, in 1859, under the 27th
section of the Act of 29th March 1832.  This entry was revived
by agreement in 1864.  The balance was finally paid off in No-
vember 1866, after the issuing of the venditioni exponas, leaving
the costs in the Orphans' Court unpaid.  The appellant contends
that the transcript and revival in the Common Pleas bars the pro-
ceeding in the Orphans' Court.  If this were a question of lien
only, it is probable the point of the appellant is well taken,
although we do not decide this.  Under the Act of 1832 the mode
of obtaining a lien on the real estate of executors, administrators,
guardians, and other accountants, is that provided in the 29th
section of the Act of 1832, by filing a transcript of the balance
due.  Another mode is provided in the same Act to obtain a lien
on real estate in the case of other orders and decrees of the
Orphans' Court.  This is under the 11th, 12th, 13th, 14th and
15th clauses of the 57th section, which provided for the issuing
of attachments and writs of sequestration to enforce orders and
decrees of the Orphans' Court.  The 15th clause makes it the duty
of the sheriff or coroner, on receiving a writ of sequestration, to
file a copy in the prothonotary's office of the same county, the
entry of which shall thenceforward charge the real estate of the
defendant and bind it in the hands of all purchasers and mort-
gagees subsequent to the entry, without other notice.  The writ of
fi. fa. being intended, under the Act of 1832, to sell personal estate
only, the fact that the decree of the Orphans' Court was of itself
no lien on real estate, seems not to have been adverted to in pass-
ing the Act of 1846, giving the writ of venditioni exponas to sell
real estate.  But whatever may be the effect of a sale of real
estate under writs issued out of the Orphans' Court, questions not
now before us, we cannot deny the writ of venditioni exponas for
this purpose, the Act of 1846 having given it in express terms,
and applied it to the sale of real as well as personal estate.  Fur-
ther legislation may be necessary to give effect to the proceeding,

and to preserve in the Common Pleas the evidence of liens on real estate. Finding no error in the proceeding, the order of the Orphans' Court is confirmed, with costs to be paid by the appellant.