## Kruska's Estate.

*Attachment execution — Confirmation of auditor's report — Judgment — Orphans' Court—Decedent's estate—Act of June 7, 1917.*

1. The confirmation of an auditor's report by the Orphans' Court is such a judgment as will, under the Act of June 7, 1917, P. L. 363, support an attachment execution.

2. A decree of distribution in the Orphans' Court makes the administrators liable personally to the distributee, and they are liable in an attachment for the amount of their bonds.

3. Where a rule of the Orphans' Court directs that the clerk is to mark the accounts of fiduciaries as confirmed absolutely if no exceptions are filed within a specified time, his doing so is a decree or judgment of the court.

*Executors and administrators—Title to property—Jurisdiction of Orphans' Court—Husband and wife—Joint bank account.*

4. The jurisdiction of the Orphans' Court is limited to the estate of which the deceased died seized.

5. Where an estate in the name of a wife is included in an estate of the husband before the Orphans' Court and the wife's executors are not represented, a decree of distribution, including the estate of the wife, will not sustain an attachment execution against the wife's executors.

6. Where a husband and wife keep a joint bank account, the title thereto vests, on the death of one of them, in the survivor.

Rule to vacate writ of attachment execution. O. C. Northumberland Co., May T., 1924, No. 45.

*J. Fred Schaffer,* for rule; *C. K. Morganroth,* contra.

POTTER, P. J., 17th judicial district, specially presiding, Aug. 25, 1925.—The writer hereof was called upon specially to hear the argument of this case because of disabilities incident to the judges regularly presiding in this judicial district.

William Kruska and Mary Kruska (at times spelled Kruski) were husband and wife and resided as such in Mt. Carmel, Penna., for some years. The husband operated a hotel in that place until or shortly before April 21, 1915, when he died, leaving his last will and testament, which was duly admitted to probate, upon which letters testamentary were in due form of law granted to Charles Kruska and John Kruska and to Katie Shultz, three of the children of this husband and wife. It appears that Katie Shultz never took part in the settlement of her father's estate, so that Charles Kruska and John Kruska are the active executors.

On April 24, 1923, Mary Kruska, the wife, died testate, her will being probated April 29, 1924, and thereupon letters testamentary were granted to Katie Shultz and to Annie Kruska, they being also children of this husband and wife, and both of them took upon themselves the active duties of the trust devolving upon them.

During the lifetime of this said husband and wife, they made deposits in a saving account of the Guarantee Trust and Safe Deposit Company of Mt.

Carmel, in the names of Mary Kruska or William Kruska, from which we are led to believe they kept a joint bank account.

It appears that on March 11, 1913, Mary Kruska deposited in the said trust company the sum of $3000, of which the following receipt is evidence:

"Mount Carmel, Pa., March 11, 1913.

"Received from Mary Kruska three thousand dollars. Investment in mortgages to be assigned to Mary Kruska and William Kruska. $3000.00.

"GUARANTEE TRUST AND SAFE DEPOSIT COMPANY,

"JOHN CARL, Jr., Treas."

On March 12, 1915, Mary Kruska again made a deposit in the same institution, as is shown by the following receipt:

"March 12th, 1915.

"Received of Mrs. Mary Kruska the sum of three thousand dollars. To be invested in mortgage at 5%.                    "JOHN CARL, Jr."

These two deposits have earned $275, making a total of the sum of $6275.

We are led to believe that the executors of William Kruska's estate have not until recently taken steps looking toward the final settlement of his estate, and we have nothing before us to show whether the deceased wife's executrices are taking any such measures or not, which is immaterial to the question before us.

William Kruska's executors claim that this said sum of $6275 belongs to his estate; that the husband permitted his money to be placed in bank in his wife's name, and that this said sum was so placed in bank; that the wife was to receive the income of it during her life, and at her death it was to go to their children, ten in number.

The executrices of the wife deny this and claim this said sum belongs to her estate. Both estates have had it appraised as an asset of each.

In William Kruska's estate an auditor on distribution was appointed, and in his disposition of the assets in that estate he treated this sum as belonging to the husband's estate, although standing in bank in the name of the wife, and distributed it to and among the children of these two decedents. His report was filed and absolutely confirmed, no exceptions having been filed to it and no appeal taken. It seems as though the executrices of the wife's estate refused to turn over to the executors of the husband's estate this said sum, whereupon an attachment execution was issued against them and served upon them, naming the Guarantee Trust and Safe Deposit Company as garnishee. A petition was then presented to court, asking for a rule upon the executors of the husband's estate to show cause why the attachment execution should not be vacated. The rule was granted, an answer to it was filed and we now have the rule before us for disposition.

The question for disposal, as we view it, is: Was the attachment execution lawfully issued or not, or will it lie in this instance?

It is resisted chiefly on two grounds: (1) Because the confirmation of the auditor's report is not such a judgment as will support the attachment execution. (2) Because the executrices of the wife's estate had no notice of the audit, were not present, took no part whatever in it and had no day in court, and, therefore, were not within the jurisdiction of the Orphans' Court.

As to the first question, we can say that, in our judgment, the confirmation of an auditor's report is such a judgment of the court as will support an attachment. The Orphans' Court Act of June 7, 1917, § 18, par. 4, P. L. 363, 375, provides as follows: "Whenever any person, against whom a decree for the payment of money has been made by any Orphans' Court, is possessed of

or entitled to any stock, deposits or debts due him, or to any legacy or interest in the estate of a decedent, the same may be levied on or attached in satisfaction of such decree by the same process and in the same manner as is now or may hereafter be provided by law in the case of judgments of any Court of Common Pleas. A writ of attachment for said purpose may be allowed by said Orphans' Court, or any judge thereof, as writs of *fieri facias* in said court are allowed, and may be served out of the county in which the same may be issued, but service on the party against whom such decree was made shall not be required if he be not found in said county.''

This is a substantial re-enactment of the provision of the Acts of March 27, 1873, P. L. 49, and of June 16, 1836, so that if an attachment in the case at bar would lie under those acts it will lie also under the Act of 1917 if the proceedings upon which it is based are regular and legal.

In Shollenberger's Appeal, 21 Pa. 337, a *fieri facias* under the Orphans' Court Act of 1832 was allowed a guardian to collect a balance due him out of his ward's estate, and it is to be noted that writs of *fieri facias* and of attachment execution are very similar in their character as well as in their results.

A judgment is the decision or sentence of the law given by a court of justice or other competent tribunal as the result of proceedings instituted therein. In the broad sense here defined, a decision of any court is a judgment, including courts of equity, admiralty and probate: 33 Corpus Juris, 1047.

While it is true that in the absolute confirmation of the accounts of fiduciaries there is not usually a written decree, nevertheless, there is a standing order with the Clerk of the Orphans' Court that if no exceptions are filed within the allotted time he is to mark them confirmed absolute, and his so doing must be recognized as a decree or judgment of the court, and a decree in the Orphans' Court that there is a sum due by an accountant is a decree for the payment of the sum found to be due for which the court may order a *fi. fa.* against the accountant: Weyand's Appeal, 62 Pa. 198. And, on the same principle, the approval of an auditor's report by the court is usually a judgment upon his disposition of the matters embraced in his report.

A decree of distribution in the Orphans' Court makes the administrators liable personally to the distributee, and they are liable in an attachment for the amount in their hands: Philadelphia v. Brennan et al., 18 Pa. C. C. Reps. 59. And in the case of Wray v. Tammany, 13 Pa. 394, it was held that an award of arbitrators was sufficient on which to issue an attachment.

In the case at bar we have the attachment founded upon an auditor's report which had been duly confirmed by the Orphans' Court. From this aspect of the case, we think, generally speaking, that this is a judgment of the court that will support the attachment, provided the proceedings had are regular.

This, then, brings us to a consideration of the second defence to the attachment. As we have said, an order or decree of the Orphans' Court can be enforced by attachment directed to one under the jurisdiction and who has his day in court. But, can this doctrine apply to a third party, who is not under the jurisdiction of the court? We think not, and this brings us to a consideration of a far more serious problem. The jurisdiction of the Orphans' Court is limited to the estate of which the testator died seized. With respect to such estate, it has full jurisdiction, but this marks its ultimate limit. Whether a specific article of property belongs to the estate is a question standing *in limine;* if it does not, the executor is not accountable therefor, and it is beyond the power of the court to control it in any way or charge liability on any one in connection therewith. Suppose the property to be in possession of a third party who claimed to have purchased it from the testator. Such

person is not under the jurisdiction of the Orphans' Court, and that court has no process by which his appearance can be compelled. And neither is the property under its jurisdiction, and it is without power to enforce its surrender. Until a common law court, by a jury, shall have decided against the adverse claimant in an action to which he shall be a party, the latter may set at defiance any order of the Orphans' Court affecting it. The mere fact that the Orphans' Court would be powerless to reach any result in such a case is sufficient to defeat a claim of jurisdiction by way of implication: Cutler's Estate, 225 Pa. 167.

It is admitted that when the audit was held in the husband's estate, the wife's estate was not in any manner represented. We are told that her two executrices were not present, either in person or by counsel. But suppose they were present as heirs of their father, they were not present as the legal representatives of the estate of the wife, and their presence as such could not be enforced. The audit was held relative to the husband's estate and not as to the wife's. The husband's estate was under the jurisdiction of the auditor, but the wife's was not. We very readily see how an order could be made respecting the husband's estate by the auditor, but we entirely fail to see how the auditor could exercise jurisdiction over the wife's property. The Act of 1917, respecting attachments in the Orphans' Court, relates to property under its jurisdiction. In this case the husband's estate was under its jurisdiction. The wife's estate was not. In all the cases cited the attachment was resorted to in order to enforce an order or a judgment concerning parties and estates in court, as in this husband's estate, but not as against those not in court, as in the wife's estate. This legal principle is further borne out in Paxson's Estate, 225 Pa. 204.

It is asserted that this husband and wife kept a joint bank account. If this is true, at the death of one of them it became the property of the survivor. And we find that the two deposits of $3000 each were deposited by the wife in her name, as is evidenced by the two receipts given to her by the trust company. This sum of $6000 stood in her name in the bank up to the time of her death, and does so to this day. This being true, and we have no reason to doubt it, we must find and regard this money, *prima facie*, to be hers and as now belonging to her estate. It is thus till proven otherwise. We fail to see how the auditor in the husband's estate, over which he had jurisdiction, could reach into the wife's estate, over which he had no jurisdiction, and appropriate money therefrom into the estate of the husband. We know of only two methods by which this could be done. First, by a suit in the Common Pleas to determine the ownership of this money. Second, by an audit of the wife's estate and a presentation by the husband's legal representatives for it. Neither of these methods have been followed in this case.

With a great deal of interest we have carefully read the opinion of Judge Miller in Jordan's Estate, 64 Pitts. L. J. 315, from the Orphans' Court of Allegheny County, upon the authority of which the auditor in the husband's estate reached over into the wife's estate and appropriated this sum of $6000 from the wife's estate into that of the husband. In our opinion, the Jordan case is not at all applicable to the case at bar. There, the estate of the husband, Preston H. Jordan, was in the Orphans' Court for settlement, and a claim was made by the wife's estate for a certain sum of money alleged to be her property in the hands of the husband. Or, the Orphans' Court had full jurisdiction of the husband's estate, and the wife's claim against his estate could be properly made. Here, the wife's estate is not in court and is not the subject of an audit or of any proceedings, notwithstanding which a certain

sum, viz., $6000, is taken from her estate and made an asset of the husband's without legal process of any kind. The proceedings were *ex parte*. This clearly cannot be done, and, in our judgment, the Jordan case is not at all applicable to the Kruska Estate.

It may be said that exceptions should have been filed to the auditor's report or an appeal taken, and that by not so doing there is no redress. But, on the other hand, it may be well said that, inasmuch as the estate of the wife was not in court and had not submitted itself to the jurisdiction, the decree or judgment on which is based the attachment execution was null and void, and, in fact, was no judgment, with which view we heartily agree. The attachment execution is the superstructure resting upon a judgment for its foundation. If the foundation falls, the superstructure is bound to follow, and in this case we are firmly of the opinion that there was no legal judgment, and, therefore, nothing for the attachment execution to rest upon; wherefore it must fall.

We have spent some time and research on this question. It was earnestly and ably argued and represented by counsel on both sides. Several nice legal propositions were developed for our disposition, which it has been interesting to follow out, but, after having done so, we think the attachment execution has no legal basis upon which to rest.

And now, to wit, Aug. 25, 1925, the rule is made absolute and the attachment execution is vacated and quashed.